UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **WARD-KRAFT, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 18CV1725 HEA |
| | ) | |
| **ZEBRA TECHNOLOGIES,** | ) | |
| **CORPORATION, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No. 23]. Plaintiff opposes the motion.

### Facts and Background

Plaintiff's Complaint alleges the following:

Since 1972, Ward Kraft has been a nationally known leader in the printing industry, specializing in the design and production of labels, commercial printing, mailers, and business forms. Ward Kraft's expertise includes creating continuous, unit set, cut sheet labels and form/label combinations for use in a variety of different industries.

In the late 1990's, Jim Riley approached Ward Kraft about assisting with the

design and development of self-laminating patient identification wristband forms for use in hospitals and throughout the medical industry. Jim Riley was then an officer of Riley, Barnard & O'Connell Business Products Inc. ("RBO"), and the owner of Laser Band, LLC.

Ward Kraft agreed and expended substantial time and resources, and provided valuable expertise, in order to develop these wristband forms, which the parties referred to as the "LB1" products. RBO agreed that, in return for Ward Kraft's significant contributions, Ward Kraft would have the exclusive right to manufacture the LB1 products. Ward Kraft ultimately did, in fact, design and manufacture these products for RBO.

In March 1999, The Standard Register Company, another market participant, threatened RBO with litigation in relation to the LB1 products. RBO then brought suit against Standard Register, seeking a declaration of non-infringement, invalidity, and unenforceability of a patent owned by Standard Register relating to certain wristband forms and labels. Standard Register then filed counterclaims against RBO and Ward Kraft alleging patent infringement, which RBO and Ward Kraft denied.

In August 2000, RBO, Standard Register, and Ward Kraft came to an agreement to end all litigation and, in conjunction with additional interested non-parties Jim Riley, Laser Band, and the Avery Dennison Corporation, entered into

2

certain other agreements to govern the rights of the various entities moving forward. As a result, in addition to a Settlement Agreement between RBO, Standard Register, and Ward Kraft, Laser Band and Ward Kraft entered into a separate License Agreement effective August 11, 2000, whereby Ward Kraft agreed to make and sell certain licensed wristband forms in exchange for the payment of royalties to Laser Band.

Under Paragraph 1 of the Agreement, and as reflected in various other portions of therein, Laser Band granted to Ward Kraft a royalty-bearing, non-exclusive license/sub-license under four patents owned by Laser Band (referred to as the "Riley Patents" in the Agreement) and one patent owned by Standard Register and licensed to Laser Band (referred to as the "Standard Patent" in the Agreement). The license granted Ward Kraft the right, under the aforementioned patents, to make, use, offer to sell, sell, and import certain types of forms identified by Laser Band as PLS-102 and PLS-102W, as well as "other forms having both labels and a Wristband, the wristband being formed from a portion of the face ply and a portion of the liner ply, with the liner ply having a pair of integrally formed tabs for fastening the wristband and with a substantial portion of the face ply in the completed wristband being laminated on both sides by the portion of the liner ply." These forms are defined and referred to throughout the Agreement as "Combo Forms."

Paragraph 1 of the Agreement further states that "Combo Forms covered by any of the Riley Patents or the Standard Patent shall be considered as 'Licensed Products.'"

In addition to the royalty-bearing patent license granted by Laser Band to Ward Kraft, the Agreement includes a mutual covenant by the parties not to sue each other in connection with Combo Forms. Specifically, in Paragraph 12(h) of the Agreement, Laser Band granted to Ward Kraft and Ward Kraft granted to Laser Band "a covenant not to sue under any intellectual property or other right in connection with the making, using, offering for sale, sale and importing of the Combo form." This mutual covenant not to sue is not limited to the Riley Patents or Standard Patent—or even patent rights generally—and is on its face broader in scope than the license granted by Laser Band to Ward Kraft under Paragraph 1 of the Agreement (regarding "Licensed Products").

Ward Kraft complied with all of its duties and obligations under the Agreement. At no point has there been any evidence or accusation by Laser Band or any successor company that Ward Kraft breached or failed to fulfill its duties or obligations under the Agreement. Ward Kraft manufactured the License Products and paid Laser Band millions of dollars in royalties based upon its sale of Licensed Products throughout the life of the Agreement.

Paragraph 12(f) of the Agreement states that Paragraphs 4 and 9-12 will survive the expiration or earlier termination of the Agreement. Under Paragraph 12(c), the Agreement inures to the benefit of the parties (Laser Band and Ward Kraft), as well as their "successors and assigns," including a successor who acquires substantially all of the business of a party.

In 2012, upon information and belief, Defendants Zebra Technologies Corporation, Zebra Technologies International, LLC, and/or ZIH Corp acquired all or substantially all of Defendant Laser Band and its business. Upon information and belief, all of these entities are now affiliated.

On July 9, 2018, Defendant Laser Band along with its corporate successors Defendants Zebra Technologies Corporation, Zebra Technologies International, LLC, and/or ZIH Corp (collectively, "Zebra") filed a lawsuit in the District Court for the Northern District of Illinois (Case No. 1:18-cv-04711-SLE) (the "NDIL Lawsuit") against Ward Kraft and one of its primary distributors, Typenex Medical, LLC.

The NDIL Lawsuit alleges that Ward Kraft is manufacturing, using, and/or selling a number of various forms that infringe Laser Band's and/or Zebra's intellectual property rights. Specifically, Laser Band and Zebra allege that "Ward Kraft manufactures and sells business forms that incorporate self-laminating, laser-printable patient identification wristbands, which Typenex markets and sells under

5

the following marks: Helix AC Laser (Adult), Helix AC Laser L2 (Adult), Helix AC Laser L2 (Pediatric/Infant), Helix AC Laser L3 (Adult), FamBand Helix Laser AC, and FamBand Laser," which the Complaint in the NDIL Lawsuit refers to as "Typenex Products." Laser Band and Zebra also allege that "Ward Kraft markets and sells business forms that incorporate self-laminating, laser-printable patient identification wristbands under the PolyBand mark." All of these accused products are the successor wristband forms to the original LB1 products mentioned above.

More specifically, the NDIL Lawsuit alleges that the Helix AC Laser L2 and/or Helix AC Laser L3 products infringe one or more of Laser Band's U.S. Patent No. 7,779,569, U.S. Patent No.8,011,125, U.S. Patent No. 7,017,293, U.S. Patent No. 7,017,294, U.S. Patent No. 7,222,448, U.S. Patent No. 7,325,347, U.S. Patent No. 7,461,473, and U.S. Patent No. 7,779,570. The NDIL Lawsuit alleges that the Helix AC Laser (Adult), Helix AC Laser L2 (Adult), Helix AC Laser L2 (Pediatric/Infant), Helix AC Laser L3 (Adult), FamBand Helix Laser AC, FamBand Laser, and PolyBand 3 products infringe one or more of Laser Band's and/or Zebra's trademark or trade dress rights under 15 U.S.C. § 1125(a). And the NDIL Lawsuit alleges that Ward Kraft uses Laser Band's and/or Zebra's LASER BAND trademark in a misleading fashion such that Ward Kraft violates 15 U.S.C. § 1125(a). All of the products named in the NDIL Lawsuit fall within the

definition of a Combo Form as defined in Paragraph 1 of the Agreement between Laser Band and Ward Kraft. All twelve Counts asserted by Laser Band and Zebra in the NDIL Lawsuit are based upon an intellectual property (or other) right. Thus, all of the Counts asserted by Laser Band and Zebra in the NDIL Lawsuit fall within the covenant not to sue that Laser Band granted to Ward Kraft in the Agreement.

By filing the NDIL Lawsuit against Ward Kraft and alleging violations of intellectual property (or other) rights through the sale of wristband form products that qualify as Combo Forms under the Agreement, Defendants breached the covenant not to sue in Paragraph 12(h) of the Agreement. Under Paragraph 12(a) of the Agreement, Laser Band and Ward Kraft agreed to litigate any action to enforce the Agreement exclusively before the federal courts in the Eastern District of Missouri. This paragraph states that the Agreement shall be construed, interpreted, and applied pursuant to the laws of the State of Missouri, and contains the following provision:

> [A]ny action by any party to enforce any provision of this Agreement shall be brought exclusively in the United States District Court for the Eastern District of Missouri, Eastern Division.

In the NDIL Lawsuit, Ward Kraft has pleaded the covenant not to sue as an affirmative defense to Laser Band's and Zebra's claims, but has not asserted any affirmative cause of action for breach or to enforce the Agreement.

## Discussion

## Motion to Dismiss Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007)). A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8h Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 526 (quoted case omitted). This standard "simply calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable" *id.*, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56. The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678-79 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.* at 679. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the plaintiff's claim is reviewed "as a whole, not plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

Defendants now move to dismiss the "Zebra Entities" Defendants for failure of the Complaint to state a claim against them.

Under *Twombly* and *Iqbal*, Plaintiff may not rely on merely alleging that the Zebra Entities are the successors of Laser Band and therefore are liable for any violation of the agreement entered into between Plaintiff and Laser Band.

> [Plaintiff's] argument that the district court erred in dismissing its claim against [Defendant] is likewise without merit. In its amended complaint, [Plaintiff] alleges that [Defendant] "acquired [the subsidiary], including its assets and liabilities," but does not plead any additional facts to support this conclusory statement. In its brief and at oral argument, [Plaintiff] asserted that by virtue of purchasing the stock of [the] subsidiary, [Defendant] became a "successor" as that term is used in paragraph 13 of the [Intellectual Property Agreement] and is therefore liable for [the subsidiary's] obligations under the IPA. As explained above, however, neither [Plaintiff] nor any of its predecessors are liable for [Principal's] obligations under the IPA. Further, even if one of [Principal's] subsidiaries were liable, [Defendant] does not automatically inherit the subsidiary's obligations solely by virtue of purchasing the subsidiary's stock.

*Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 769–70 (8th Cir. 2012).

Plaintiff's Complaint, in completely conclusory fashion, alleges that in 2012, upon information and belief, the Zebra Entities (Zebra Technologies Corporation, Zebra Technologies International, LLC and/or ZIH Corp) acquired all or substantially all of Defendant Laser Band and its business. Also alleged is that upon information and belief, all of these entities are now affiliated. Plaintiff then alleges that the products named in the Northern District of Illinois lawsuit fall within the definition of a Combo Form as defined in the Agreement between Laser Band and Plaintiff, and that all twelve Counts asserted by Laser Band and Zebra in the Northern District of Illinois lawsuit are based upon an intellectual property (or other right, and therefore all of the Counts asserted by Laser Band and Zebra fall within the covenant not to sue that Laser Band granted to Plaintiff in the

10

Agreement. Plaintiff gives no facts to support the conclusions that the Zebra Entities are the successor to Laser Band and that these entities are now affiliated. Under *Luken*, these allegations fall short of setting forth a claim that is plausible on its face.

## Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss the Zebra Entities is well taken.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 23], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Zebra Technologies Corporation, Zebra Technologies International, LLC and ZIH Corp are dismissed from this action.

**IT IS FURTHER ORDERED** that Plaintiff is granted 14 days from the date of this Opinion, Memorandum and Order to file an Amended Complaint.

Dated this 30th day of May, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE